188 Cal.App.4th 1024 (2010)
116 Cal. Rptr. 3d 294
In re C.B. et al., Persons Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Appellant,
v.
B.B. et al., Defendants and Respondents.
No. E050209.
Court of Appeals of California, Fourth District, Division Two.
September 27, 2010.
*1026 Pamela J. Walls, County Counsel, and Anna M. Deckert, Deputy County Counsel, for Plaintiff and Appellant.
Michael D. Randall, under appointment by the Court of Appeal, for Defendant and Respondent B.B.
Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Respondent C.B.

CERTIFIED FOR PARTIAL PUBLICATION[*]

OPINION
RICHLI, J.
"One of the key elements of any interstate compact is uniformity in interpretation. Uniformity, however, is lacking with respect to the issue of whether the [Interstate Compact on the Placement of Children] applies to the placement of a child with a natural parent ...." (Butler, Child WelfareOutside the Interstate Compact on the Placement of Children Placement of a Child With a Natural Parent (1992) 37 Villanova L.Rev. 896, 916, fn. omitted.)
As we will discuss, California cases have consistently held that the Interstate Compact on Placement of Children (ICPC; Fam. Code, § 7900 et seq.) does not apply to an out-of-state placement with a parent. They have even gone so far as to invalidate statewide rules and regulations that purported to make the ICPC apply. Other jurisdictions that have taken the same position include Arkansas (Arkansas Dept. of Human Services v. Huff (2002) 347 Ark. 553, 562-564 [65 S.W.3d 880, 886-888]), New Hampshire (In re Alexis O. (2008) 157 N.H. 781, 788-791 [959 A.2d 176, 182-185]), New Jersey (State, DYFS v. K.F. (2002) 353 N.J.Super. 623, 631-636 [803 A.2d 721, 726-729]), Washington (In re Dependency of D.F.-M. (2010) 157 Wn.App. 179, 182-191 [236 P.3d 961]), and the Third Circuit (McComb v. Wambaugh (3d Cir. 1991) 934 F.2d 474, 481).
*1027 This brings California into conflict with those jurisdictions holding that the ICPC does apply to an out-of-state placement with a parent. These include Alabama (D.S.S. v. Clay County Dept. of Human Resources (Ala.Civ.App. 1999) 755 So.2d 584, 590), Arizona (Arizona Dept. of Economic Security v. Leonardo (2001) 200 Ariz. 74, 79-83 [22 P.3d 513, 518-522]), Delaware (Green v. Division of Family Services (Del. 2004) 864 A.2d 921, 926-928), Massachusetts (Adoption of Warren (1998) 44 Mass.App.Ct. 620, 623-624 [693 N.E.2d 1021, 1024-1025]), Mississippi (K.D.G.L.B.P. v. Hinds County DHS (Miss. 2000) 771 So.2d 907, 913), New York (Faison v. Capozello (N.Y.App.Div. 2008) 50 A.D.3d 797, 797-798 [856 N.Y.S.2d 179, 179-180]), and Oregon (State ex rel. Juvenile Dept. of Clackamas County v. Smith (1991) 107 Or.App. 129, 132, fn. 4 [811 P.2d 145, 147]).[1]
We find the decisions in California and elsewhere holding that the ICPC does not apply to be far better reasoned than those holding that it does. Accordingly, we see no reason not to follow our sister California courts. We are publishing this opinion, however, to point out that the resulting lack of uniformity is dysfunctional, that courts and rule makers have not been able to fix it, and hence that it may call for a multistate legislative response.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. The Beginning of the Dependency.

B.B. (the father) and C.B. (the mother) are married. They have three children. C.B., a boy, is eight. T.B., another boy, is six. H.B., a girl, is one.
In August 2009, when H.B. was born, the mother tested positive for methamphetamine. The father was out of state, working offshore in the Gulf of Mexico as an underwater welder. He was "gone for 3 months or more at a time ...." The mother and the children were living temporarily with the mother's grandmother. However, they were planning on moving to the Gulf area to be with the father.
*1028 The Riverside County Department of Public Social Services (the Department) believed the father was aware of the mother's drug abuse, because he had been present when she was arrested in December 2008 for being under the influence of a controlled substance.
On August 25, 2009, the Department filed a dependency petition concerning all three children. Although it purported to detain them, it detained them from the "father only"in other words, it left them with the mother. At the initial detention hearing, the juvenile court approved the detention of the children from the father only, and it placed them in the custody of the mother.
The only allegation of the petition with respect to the father was that "[t]he father failed to protect his children, despite the mother's substance abuse history and prior arrests for being under the influence of a controlled substance, [in that] the father left the [s]tate and allowed his children to remain in the mother's care." (Allegation b-4.)[2]
On September 2, 2009, the social worker contacted the father by telephone. The father said he knew that the mother had two prior drug-related arrests, but he added that she did not use drugs when he was around. He said he had gone to work outside the state "to make a better life for his family ...." He was making about $6,000 a month. His paychecks were sent to the mother, who in turn sent him small sums, as needed. He wanted the whole family to move to the Gulf area.
In the jurisdictional/dispositional report, the social worker concluded that there was insufficient evidence to sustain Allegation b-4: "[T]he family concurs that the father left the state to provide a better life for his family.... [T]hey were supposed to [go] to ... [the Gulf area] to reside with the father.... [H]e was not aware of [the] mother's recent substance abuse and felt that the mother and children were safely staying with the maternal great grand[-]mother until he was able to move them to [the Gulf area]."

B. The Amended Petition.

On September 29, 2009, the mother tested positive for methamphetamine. On October 6, when a social worker made an unannounced home visit, she discovered that the mother had moved out, taking the children with her. The Department therefore filed an amended petition.
*1029 The father immediately returned to California. On October 13, 2009, when a social worker called him, he reported that the mother and the children were with him. The Department detained the children, but only from the mother. In other words, it placed them with the father, on the condition that the mother not live with them.
On October 14, 2009, at the detention hearing on the amended petition, the juvenile court approved the detention of the children from the mother only, and it placed them in the custody of the father.

C. The Jurisdictional Hearing.

In November 2009, at the jurisdictional hearing, counsel for the Department asked the juvenile court to find Allegation b-4 true. Counsel for the father pointed out that the social worker had concluded that it was not supported by sufficient evidence. Counsel for the Department responded: "[T]he Department as a whole disagrees with the statement of this social worker ...."
The juvenile court found Allegation b-4 true. It also found true the following allegations with respect to the mother:
Allegation b-1: When the youngest child was born, both the mother and the youngest child tested positive for methamphetamine.
Allegation b-2: The mother had "an extensive history" of abusing methamphetamine and "numerous" drug-related arrests.
Allegation b-3: The mother had failed to participate in services, continued to abuse methamphetamine, and absconded with the children.
The juvenile court therefore asserted jurisdiction based on failure to protect. (Welf. & Inst. Code, § 300, subd. (b).) Pending a further dispositional hearing, it placed the children in the father's custody.
On November 4, 2009, the father indicated he was planning to go back to the Gulf area, leaving the children with the mother's mother. The social worker approved this, on the condition that they not be left alone with the mother. Accordingly, on November 10, the father left the state again. On December 3, the juvenile court allowed the children to go to the Gulf area for an extended holiday visit with the father. The mother was allowed to go with the children, on the condition that she not be left alone with them.

*1030 D. The Dispositional Hearing.

On January 14, 2010, at the dispositional hearing, the juvenile court placed the children with the father, with family maintenance services; it ordered the mother not to live in the home and to participate in reunification services.
A discussion of the ICPC ensued. Counsel for the Department argued that the juvenile court could not place the children out of state with the father unless it complied with the ICPC. Counsel for the father argued that the ICPC did not apply to a placement with a parent. Counsel for the Department agreed that the ICPC did not apply to a placement with a nonoffending, noncustodial parent, but she argued that the father was an offending parent. The juvenile court continued the hearing.
On January 21, 2010, at the continued dispositional hearing, counsel for the Department reported that, according to the Alabama ICPC coordinator, the children could not be placed in Alabama other than pursuant to the ICPC. The juvenile court ordered the Department to initiate a priority ICPC placement of the children in Alabama. It continued the dispositional hearing so it could review the status of the ICPC process.

E. The ICPC Status Review Hearing.

As of the continued hearing, on February 3, 2010, Alabama had not yet responded to the ICPC notice.
Counsel for the Department argued that "mother and father need ... to remain here in California awaiting ICPC before they relocate to Alabama Counsel for the father argued again that the ICPC did not apply. Counsel for the mother and counsel for the minors concurred. After hearing argument, the juvenile court stated:
"We make efforts all the time here to try to find a way down a mountain in order to reunite families.... The way down this mountain is to, in theory, allow father to go out of the state and mother remain here. What's the protection? We still have jurisdiction. If mother leaves the state, I issue warrants for her and the children. We bring them back....
"... This is the best thing for this family. Pursuant to [Welfare and Institutions Code section] 390, I will set aside my finding[] that [Allegation] b-4 ... is true, rendering the father a non offending father."
*1031 Counsel for the Department objected, citing Code of Civil Procedure section 1008. The juvenile court responded: "A simple [petition under Welfare and Institutions Code section] 388 would cure that. It's still going to be my order ...."
The juvenile court authorized the father to leave California with the children. It ordered, however, that his custody of the children be subject to supervision by the Department. It also ordered him to participate in family maintenance services and specifically to participate in Al-Anon. It ordered the mother not to leave California.

II

THE DENIAL OF A STAY[*]

III

THE APPLICATION OF THE ICPC
The Department contends that the juvenile court erred by placing the children with the father out of state without complying with the ICPC.
The juvenile court acted on the assumption that the ICPC does not apply to an out-of-state placement with a noncustodial, nonoffending parent; it set aside Allegation b-4 to make the father a nonoffending parent, and thus to obviate the need to comply with the ICPC. The Department argues that the ICPC does apply to an out-of-state placement with a noncustodial, nonoffending parent, at least when, as here, the juvenile court orders further supervision and services for that parent. Alternatively, the Department argues that the father was both a custodial parent and, in light of the true finding on Allegation b-4which, it argues, the juvenile court should not have set asidean offending parent. The parents, on the other hand, contend the ICPC does not apply to an out-of-state placement with a parent at all.
(1) "Interstate compacts, like the ICPC, `are formal agreements among and between states that have the characteristics of both statutory law and contractual agreements. They are enacted by state legislatures that adopt reciprocal laws that substantively mirror one another.' [Citation.] The ICPC has been enacted in all fifty states, the District of Columbia and the U.S. Virgin Islands. [Citation.]" (In re Alexis O., supra, 157 N.H. at p. 784.) *1032 California adopted the ICPC in 1974. (Civ. Code, former § 264 et seq.; Stats. 1974, ch. 956, § 1, p. 1992.) "`The purpose of the ICPC is to facilitate cooperation between participating states in the placement and monitoring of dependent children. [Citation.]'" (In re Emmanuel R. (2001) 94 Cal.App.4th 452, 458 [114 Cal.Rptr.2d 320].)
The key provisions of the ICPC state: "Before sending, bringing, or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption, the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state." (Fam. Code, § 7901, art. 3, subd. (b), italics added.) "The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." (Id., subd. (d).) (We will refer to these as the notice provisions.)
"Sending agency" is defined as any person or other entity that "sends, brings, or causes to be sent or brought any child to another ... state." (Fam. Code, § 7901, art. 2, subd. (b).)
"Receiving state" is defined as "the state to which a child is sent, brought, or caused to be sent or brought ... for placement...." (Fam. Code, § 7901, art. 2, subd. (c).)
"Placement" is defined as "the arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution...." (Fam. Code, § 7901, art. 2, subd. (d).)
(2) In our view, the notice provisions do not apply to a placement with a parent. Admittedly, the definition of "placement" is somewhat ambiguous. "Family free home" is not a term of art, and its meaning is by no means clear on its face. Even assuming, however, that a "family free home" can include the home of a parent, and therefore that a "placement" can include a placement with a parent, the notice provisions do not apply unless the placement is "in foster care or as a preliminary to a possible adoption." Thus, the notice provisions would not apply to an out-of-state placement with a parent. In 1978, the Attorney General came to the same conclusion. (61 Ops.Cal.Atty.Gen. 535, 540 (1978).)[3]
*1033 The California courts have consistently followed this view. First, Tara S. v. Superior Court (1993) 13 Cal.App.4th 1834 [17 Cal.Rptr.2d 315] (Fourth Dist., Div. One) held that the ICPC does not apply to an out-of-state placement with a parent. It explained that the ICPC is "limit[ed] ... to foster care and possible adoptionneither of which would involve natural parents." (Tara S., at p. 1837.) Next, In re Johnny S. (1995) 40 Cal.App.4th 969 [47 Cal.Rptr.2d 94] (Sixth Dist.) likewise held that the ICPC does not apply to an out-of-state placement with a parent. (Johnny S., at pp. 976-977.) Finally, In re John M. (2006) 141 Cal.App.4th 1564 [47 Cal.Rptr.3d 281] (Fourth Dist., Div. One) held that "[p]lacement with an out-of-state parent need not follow ICPC procedure...." (Id. at pp. 1573-1575.)
Various rule-making bodies, however, have battled to extend the ICPC to a placement with a parent. One such body is the Association of Administrators of the Interstate Compact on the Placement of Children (the Association). The ICPC authorizes the Association "to promulgate rules and regulations to carry out more effectively the terms and provisions of this compact." (Fam. Code, § 7901, art. 7; see also [as of Sept. 27, 2010].) In 1978, the Association adopted its regulation III. Regulation III defined "placement" for purposes of the ICPC as "includ[ing] the arrangement for the care of a child in the home of his parent... when the sending agency is any entity other than a parent, relative, or non-agency guardian...." (Available at Tex. Dept. of Family & Protective Services, Child Protective Services Handbook, Appen. 9110-B, [as of Sept. 27, 2010].) It also provided that the notice provisions of the ICPC applied to any placement as defined either by the ICPC or by regulation III. (.)
In McComb v. Wambaugh, supra, 934 F.2d 474, however, the court invalidated this aspect of regulation III. First, it held, based on the text of the ICPC, that "the Compact applies only to substitutes for parental care such as foster care or arrangements preliminary to adoption." (934 F.2d at p. 480.) "[T]he Compact does not apply to parental placements." (Id. at p. 481.) Thus, regulation III "expands the scope of the Compact...." (Ibid.) "`A regulation cannot be upheld if it is contrary to the statute under which it was promulgated.' [Citation.] No regulation can override legislative intent and extend beyond the legislative scheme. [Citation.] `[I]n any conflict between a statute *1034 and a regulation purporting to implement the statutes provision, the regulation must, of course, give way.' [Citations.] Reviewed under the above standard, the regulation as it might be applied here is of no effect and the statutory language must govern." (Ibid.)
Similarly, chapter 31-510 of California's "Child Welfare Services Program Manual of Policies and Procedures"[4] provides that the ICPC's notice provisions apply to an out-of-state placement in the home of a parent. (Available at [as of Sept. 27, 2010].) In 1995, however, In re Johnny S., supra, 40 Cal.App.4th 969, citing McComb v. Wambaugh, supra, 934 F.2d at p. 481, invalidated this provision: "These regulations were promulgated by an executive agency pursuant to its rulemaking authority. To the extent that regulations conflict with statutes or decisional law, the law controls the regulations. [Citation.] The ICPC ... requirement of advance approval from the receiving state for a placement is clearly limited to cases of placement `in foster care or as a preliminary to a possible adoption....' [Citation.] Regulations requiring such advance approval for placement with a parent are neither binding nor persuasive in light of the limitations expressed in the statute itself." (Johnny S., at p. 978.)
In 1996, the Association carved out one exception to its overall position that the ICPC should apply to an out-of-state placement with a parent: It recommended that the ICPC should not apply to an out-of-state placement with a nonoffending, noncustodial parent, provided the sending state does not retain jurisdiction. (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2006 ed.) § 2.128[3], p. 2-252 (Seiser & Kumli).)
Effective January 1, 1999, the Judicial Council adopted former rule 1428 of the California Rules of Court (Rule 1428). Former Rule 1428 was designed, in part, to implement the Association's 1996 recommendation. (Seiser & Kumli, supra, § 2.128[3], p. 2-252.) It has since been renumbered as California Rules of Court, rule 5.616 (Rule 5.616), without any relevant substantive change. Accordingly, Rule 5.616(b)(1) now provides:
"(A) A court directing or making an award of custody to a parent of the child is not a placement within the meaning of this rule, unless the sending court retains dependency jurisdiction over the child or the order or award requests or provides for supervision or other services or places some other condition or restriction on the conduct of the parent.
*1035 "(B) Except in cases in which a child is placed with a parent and jurisdiction has been terminated or in cases in which dependency is maintained only to provide services to or impose conditions on the noncustodial parent remaining in the sending jurisdiction, the following situations constitute a placement and the compact must be applied:
"(i) An order causing a child to be sent or brought to another party in a compact jurisdiction without a specific date of return to the sending jurisdiction; or
"(ii) An order causing a child to be sent or brought to another party in a compact jurisdiction with a return date more than 30 days from the start of the visit or beyond the ending date of a school vacation period."
(3) In re John M., supra, 141 Cal.App.4th 1564, however, held that "to the extent that [R]ule 1428 requires ICPC compliance in the case of an out-of-state placement with a parent, it is ineffective." (Id. at p. 1575.) "The Judicial Council is empowered to `adopt rules for court administration, practice and procedure.' [Citation.] `[R]ules of court are supposed to assist in interpreting and implementing the legislative scheme for dependent minors. In cases of conflict or ambiguity the statutory language, and Supreme Court decisions interpreting those statutes, must control over the rules.' [Citations.] Rule 1428 attempts to expand the application of the ICPC to placements with out-of-state parents. It thus conflicts with the statutory language, which controls over the rule." (Ibid.) Although In re John M. involved former Rule 1428, it applies equally to Rule 5.616(b)(1).[5]
In this case, the juvenile court seemed to read Rule 5.616 to mean that the application of the notice provisions of the ICPC turned on whether the father could be deemed a nonoffending, noncustodial parent. That was why it set aside Allegation b-4. Under Rule 5.616(b)(1)(A), however, any out-of-state placement with a parenteven a nonoffending, noncustodial parentis subject to the notice provisions of the ICPC, provided the sending court either (1) retains jurisdiction over the child or (2) places some condition or restriction on the conduct of the out-of-state parent. Here, the juvenile court did retain jurisdiction. Moreover, it required the father to attend Al-Anon and to participate in family maintenance services. Accordingly, if Rule 5.616(b)(1) was valid, then the juvenile court erred by failing to comply with the ICPC.
*1036 (4) Rule 5.616(b)(1), however, was not valid. Under Tara S., Johnny S., and John M., an out-of-state placement with a parent is never subject to the ICPC. Thus, the juvenile court did not err by failing to comply with the ICPC.
We therefore need not decide whether the juvenile court erred in setting aside Allegation b-4. The ICPC simply did not apply, regardless of whether the father was an offending or a nonoffending parent. The juvenile court did the right thing, even if for the wrong reasons. Any error in setting aside Allegation b-4 is harmless.[6]
In sum, we agree with the California case law cited above; even if we did not, we might well adhere to it as a matter of stare decisis. We are publishing this opinion, however, to point out that there are potentially thorny practical issues arising out of the lack of uniformity in this area.
First, the sending agency may inadvertently violate the law of the receiving state. The ICPC provides: "The sending, bringing, or causing to be sent or brought into any receiving state of a child in violation of the terms of this compact shall constitute a violation of the laws respecting the placement of children of both the state in which the sending agency is located or from which it sends or brings the child and of the receiving state. A violation may be punished or subjected to penalty in either jurisdiction in accordance with its laws." (Fam. Code, § 7901, art. 4.) This, in turn, may jeopardize the placement. Here, counsel for the Department advised the juvenile court that the Alabama authorities had taken the position that the children could not be placed there until "full completion of the ICPC." (See D.S.S. v. Clay County Dept. of Human Resources, supra, 755 So.2d at p. 590.) Counsel further advised the court that "placing a child in a state without approval from the receiving state ... can prevent us from having any other future placements in their state."
Second, the Association has consistently taken the position that the ICPC should apply to an out-of-state placement with a parent. Its opinion deserves respect; it has overwhelming expertise in this area. And it does not take an expert to conclude that there should be some way for one state to ask another state to supervise a placement with a parent. Although we have concluded that the ICPC does not provide for this, and that the Association and the Judicial Council do not have the legal authority to bring this about on their own, it may be time for a 50-state effort to extend the ICPC to this situation.

*1037 IV

DISPOSITION
The order appealed from is affirmed.
Ramirez, P. J., and Miller, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.
[1] Florida cannot seem to make up its mind. (Compare State, Dept. of Children & Family Services v. L.G. (Fla.Dist.Ct.App. 2001) 801 So.2d 1047, 1051-1052 [First Dist.] with H.P. v. Department of Children & Families (Fla.Dist.Ct.App. 2003) 838 So.2d 583, 585-586 [Fifth Dist.] and Department of Children & Families v. Benway (Fla.Dist.Ct.App. 1999) 745 So.2d 437, 439 [Fifth Dist.].)
[2] This allegation was numbered b-3 in the original complaint and b-4 in the amended complaint. We will refer to it as Allegation b-4 throughout for consistency and clarity.
[*] See footnote, ante, page 1024.
[3] As the Attorney General cautioned, other requirements of the ICPC are not necessarily limited to placements in foster care or for adoption. (61 Ops.Cal.Atty.Gen., supra, at p. 544.) These would include the requirement that the sending agency retain jurisdiction over the child. (Ibid., citing Fam. Code, § 7901, art. 5, subd. (a).) In this case, however, there is no claim that the juvenile court has failed to comply with these requirements or has made compliance with them impossible. For example, the juvenile court intended to retain jurisdiction. Only the notice provisions are at issue.
[4] The manual has the status of a statewide regulation. (Cal. Code Regs., tit. 22, div. 2, pt. 1.)
[5] Indeed, but for a quirk of timing, the Judicial Council might not have even adopted Rule 5.616(b)(1). Rule 5.616 was adopted on June 30, 2006, but it did not go into effect until January 1, 2007. (Historical Notes, 23 pt. 1B West's Ann. Court Rules (2006 ed.) foll. rule 5.616, p. 594.) Meanwhile, on August 16, 2006, In re John M. was decided. Thus, Rule 5.616(b)(1) was essentially dead on arrival.
[6] The Department has not argued that the order setting aside Allegation b-4 was prejudicial in any respect other than in its impact on the ICPC issue.