[No. B237034. Second Dist., Div. Three. Aug. 16, 2012.]

In re B.S., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
FRITZ S., Defendant and Appellant.

**COUNSEL**

Deborah Dentler, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, Acting County Counsel, James M. Owens, Assistant County Counsel, and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**ALDRICH, J.—**

## INTRODUCTION

Fritz S., father of B.S., appeals from the 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[1] contending the court erred as a matter of law when it denied his request to have B. placed with him in Texas merely

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

because Texas authorities denied two notices under the Interstate Compact on the Placement of Children (ICPC) (Fam. Code, § 7900 et seq.). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The petition*

The Los Angeles County Department of Children and Family Services (the Department) received two referrals concerning B., then five years old, and his half siblings, Ramsey (11 years old) and Angelica (16 years old). The referrals included allegations that the children's mother (mother) was using drugs and physically abusing the children, and together with her boyfriend, was emotionally abusing the children.[2] Mother explained to the investigating social worker that B.'s father Fritz had sexually abused Angelica when the family lived in Texas. Mother and Fritz were also in a custody battle over B.

The Department reported that Fritz had no involvement in B.'s life and had had no contact with the child in three years. Fritz is a registered sex offender in Texas as the result of a plea in March 2007 of molesting Angelica. Fritz admitted to *one* incident in which he fondled Angelica's breasts and between her legs when she was 12 years old. However, Angelica reported ongoing sexual abuse by Fritz for an unknown amount of time. She claimed he fondled her more than 10 times. She complained to mother who did not stop the abuse.

The report from the Texas Department of Public Safety indicates that Fritz was charged with violation of Texas Penal Code section 21.11(A)(1) "Indecency with a Child."[3] (Some capitalization omitted.) *His registration as a public sex offender does not expire.* According to the order of deferred adjudication, Fritz pled guilty to *two* counts of indecency with a child, a second degree felony. The order indicates that the trial court heard the evidence and found it "substantiates Defendant's guilt." The Texas court deferred adjudication of guilt and placed Fritz on community supervision for five years and on the sex offender caseload. The sex offender registration requirements applied to Fritz and so he registered as a sex offender. In June 2010, the Texas court ordered that Fritz could not reside in a household with children under the age of 18, with the exception of his biological children, without a designated chaperone present and supervising.

---

[2] Neither mother nor the boyfriend is a party to this appeal.

[3] Texas Penal Code section 21.11(a) reads, "A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person: [¶] (1) engages in sexual contact with the child or causes the child to engage in sexual contact . . . ."

Ever since his plea, Fritz has been in therapy and was on probation until March 2012. He claimed also to be addressing his alcohol issues and had been sober since being arrested in the fall of 2006. He and mother separated soon after his arrest. He is involved with the Texas Child Protective Services as the result of the plea. He claimed to have been awarded custody of B. in his divorce, but mother took B. to California when the child was a toddler. Fritz explained that following multiple hearings in San Bernardino County, a court mediator decided that B. was best served in the care of mother.

Mother claimed Fritz had not provided for B. "He was always drunk." Although mother left Texas, she claimed Fritz always knew where she was. Fritz admitted he "was addicted to alcohol" and did not support B., but claimed mother did not tell him where she was. B. stated he knew who Fritz was but did not remember him.

The juvenile court appointed counsel for Fritz.

The Department filed an amended petition alleging under section 300, subdivision (b) (failure to protect) that mother and her boyfriend have a history of engaging in violent altercations, and mother is a current abuser of prescription medication. Under subdivisions (d) (sex abuse) and (j) (abuse of a sibling) the petition alleged Fritz sexually abused Angelica and mother did not protect the child, but allowed Fritz unlimited access to Angelica; Fritz was convicted of two counts of indecency with a minor resulting in five years of probation and his registration as a sexual offender.

In a supplemental report, the Department related that Fritz denied the abuse had occurred on more than one occasion despite his plea to two counts. Fritz stated: " '[t]here were a couple of times when Angelica threw herself physically on me . . . across my body. . . .' " With respect to another incident, he claimed he was " 'really intoxicated at that time.' "

The Counseling Group in Texas submitted a letter discussing Fritz's sex abuse therapy. The social worker at The Counseling Group reported that Fritz had "grown tremendously" and "made significant changes" in the three and a half years he had been a client there. The social worker wrote, "There are numerous cognitive and behavioral dynamics common in sex offenders: [including] selfishness, manipulation, . . . making excuses, and using numerous cognitive distortions to rationalize/justify behaviors the individual knows is wrong." The social worker at The Counseling Group stated that Fritz "takes responsibility fully for his sexual offense" and "has never blamed the victim," or "his drinking for his commission of the offense." He was on track to graduate from the group early in 2012.

The juvenile court sustained the above cited allegations in the amended petition and declared B. a dependent of the court pursuant to subdivisions (b)

and (j) of section 300. By so doing, the court rejected Fritz's attorney's request that it dismiss the allegation of sex abuse or amend the count to indicate only one such incident. The court also found by clear and convincing evidence that substantial danger existed to the physical health of B. and there was no reasonable means to protect him without removal from mother's and Fritz's physical custody. The court awarded Fritz monitored visits and reunification services to include individual counseling and parenting classes.

At Fritz's request, the court ordered an ICPC be conducted for the possibility of placing B. in Fritz's home in Texas.

### 2. *The six-month review period (§ 366.21, subd. (e))*

Three weeks after its submission, the Department reported that the Texas authorities "denied" the ICPC request "due to [Fritz's] background checks. . . . Fritz [S.] is a registered sex offender and has CPS [(Child Protective Services)] history with Texas. The State of Texas *will not go any further with the home study*." (Italics added.) Fritz then called the Texas authorities explaining that he had complied with his probation, had been attending therapy and Alcoholics Anonymous, his fiancée had become a court-approved monitor for his visits with B., and he had had a successful visit with the child in California. He was told to resubmit the ICPC request.

At the parties' behest, the court ordered a second ICPC.

In a second report, Fritz's therapist wrote Fritz continued to attend counseling. Fritz had also completed a parenting class with emphasis on young children with special needs and emotional issues. According to the therapist, Fritz continued to make B. a priority in his life and to prepare for B.'s placement with him. The Department attempted to arrange for Fritz to attend a session with B.'s therapist, but the therapist refused.

In March 2011, at the six-month review hearing (§ 366.21, subd. (e)), the juvenile court found that return of B. to his parents would create a substantial risk of detriment to his safety, protection, or physical or emotional well-being, creating a continued need for placement. The court also found Fritz had only made partial progress in his plan. However, the court liberalized Fritz's visitation to unmonitored in California only, stopping short of allowing overnight visits.

### 3. *The 12-month review period (§ 366.21, subd. (f))*

Texas denied the Department's second ICPC request: "The state of Texas will not go any further with the home study and *placement is not recommended*." (Italics added.) Among the reasons the Texas ICPC liaison gave

was that Fritz has a criminal record dating back to the age of 16. This "criminal history and CPS history are a *major concern* due to the nature of the offenses committed . . . . [Fritz] will complete the terms of his probation, and be released from probation, on February 28, 2010. After this date, *there will be no further court ordered services such as counseling and sex offender therapy for [Fritz] and no further court ordered supervision. There will be no required professionals involved with [Fritz] who can continue to assess the safety of B. in the home.*" (Italics added.) Also, Fritz is an admitted alcoholic in the recovery stage, and so relapse was another "major concern" for the Texas authorities. Although Fritz stated that he attends Alcoholics Anonymous, "*he does not attend on a regular basis.*" "*He also stated that he has not talked to his [Alcoholics Anonymous] sponsor in quite a while.*" (Italics added.) Additionally, the Texas liaison had never met Fritz's fiancée, and had no documentation about any criminal or California child protective services check on her.

Meanwhile, Fritz continued attending his sex offender counseling, the individual counseling ordered by the Texas court. But, despite three separate requests, the Department did not receive an updated report from Fritz's therapist. No conjoint counseling with Fritz and B. had occurred because Fritz lived in Texas and the caregiver had no secure land telephone line with which to have telephonic counseling. Fritz visited B. in January and in March 2011, and planned several visits in the fall of 2011 when he would be in California for the 12-month hearing.

At the 12-month review hearing (§ 366.21, subd. (f)), the juvenile court found by a preponderance of the evidence that return of B. to Fritz's physical custody "would create a substantial risk of detriment to his safety, protection, or physical or emotional well-being, creating a continuing necessity for and appropriateness of the current placement . . . ." The court found by clear and convincing evidence that Fritz's progress in his programs was partial only. The court explained while Fritz had kept in touch with B. and made progress in resolving the problems that led to B.'s removal from his custody, "he's not demonstrated the capacity and ability to complete the objectives of the treatment plan and to provide for B.'s needs." The court heard Fritz's argument that the ICPC did not apply to him, but distinguished *In re C.B.* (2010) 188 Cal.App.4th 1024 [116 Cal.Rptr.3d 294], the case Fritz relied on. Then, recognizing that Texas had twice denied the ICPC because of Fritz's history and his then current status as a sex offender, the court stated, "I cannot in good conscience place B. with [Fritz] and have no social worker going out there to assess the home situation every month and to even check on B. on an unannounced home call if I wanted to. *There's no way for me to*

*be able to ensure that B. is safe in that home."* (Italics added.) The court terminated Fritz's reunification services.[4]

## CONTENTION

Fritz contends the juvenile court was not authorized to refuse to return B. to him on the basis of concern that absent an ICPC, the placement would not be supervised by Texas.

## DISCUSSION

Fritz argues that the juvenile court was not authorized by section 366.21, subdivision (f) to withhold his placement request "absent ICPC supervision." Citing *In re A.L.* (2010) 190 Cal.App.4th 75, 78 [117 Cal.Rptr.3d 723], he effectively argues, as there are no factual disputes, that we are presented with a legal question for our de novo consideration.

Insofar as we are asked to resolve a legal question, our review is de novo (*In re A.L., supra,* 190 Cal.App.4th at p. 78); but insofar as we must determine whether the juvenile court erred in refusing to place B. with Fritz at the 12-month hearing, we apply the substantial evidence test. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763 [42 Cal.Rptr.2d 755].)

Section 366.21, subdivision (f) provides that at the 12-month hearing, "[t]he court shall order the return of the child to the physical custody of his or her parent or legal guardian *unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. . . .* The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (Italics added.)

█ Here, the court found that Fritz had only made partial progress in his court-ordered treatment programs. The record supports this finding. Fritz is a registered sex offender (cf. Fam. Code, § 3030.5). Although Fritz insists, and his Texas therapist agreed, that he has taken responsibility for his sexual abuse of Angelica, *Fritz denied responsibility to the social worker in California* by admitting to only *one* incident, whereas he pled guilty to two counts.

---

[4] The court did not set the section 366.26 permanent plan hearing, and so Fritz was not required to challenge the court's ruling terminating his reunification services by way of petition for extraordinary writ review. (§ 366.26, subd. (*l*).)

Additionally, Fritz has not maintained contact with his Alcoholics Anonymous sponsor and does not regularly attend meetings, and Fritz admitted his alcoholism played a role in Fritz's sex abuse of Angelica. His lack of progress puts into question Fritz's rehabilitation. Finally, Fritz and B. have had very little contact over the years. The child did not remember Fritz at the time he was declared a dependent. Since then, the two have had less than a handful of visits and there has been no conjoint counseling between them. Fritz argues he and the child are "bonded," but he bases that on his own attorney's argument in court. "[U]nsworn testimony does not constitute 'evidence' within the meaning of the Evidence Code." (*In re Heather H.* (1988) 200 Cal.App.3d 91, 95 [246 Cal.Rptr. 38].) Fritz does not challenge the finding of sufficient evidence here. Therefore, evidence supports the juvenile court's finding that placement of B. with Fritz would be detrimental to the child's safety, protection, or physical or emotional well-being. (§ 366.21, subd. (f).) For that reason, the court clearly exercised its discretion in refusing to place the child with Fritz.

Fritz argues that "no California case has construed [section 366.21, subdivision (f)] as permitting a juvenile court in California to rest a 'substantial risk of detriment' finding on the absence of an ICPC." He argues the court abused its discretion by basing its detriment finding on Texas's rejection of the ICPC.

As background, " '[i]nterstate compacts, like the ICPC, "are formal agreements among and between states that have the characteristics of both statutory law and contractual agreements. They are enacted by state legislatures that adopt reciprocal laws that substantively mirror one another." [Citation.]' . . . California adopted the ICPC in 1974. [Citations.] ' "The purpose of the ICPC is to facilitate cooperation between participating states in the placement and monitoring of dependent children. [Citation.]" ' [Citation.]" (*In re C.B., supra*, 188 Cal.App.4th at pp. 1031–1032.)

"The key provisions of the ICPC state: 'Before sending, bringing, or causing any child to be sent or brought into a receiving state *for placement in foster care or as a preliminary to a possible adoption*, the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state.' (Fam. Code, § 7901, art. 3, subd. (b), italics added.) 'The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.' (*Id.*, subd. (d).) (We will refer to these as the notice provisions.)" (*In re C.B., supra*, 188 Cal.App.4th at p. 1032.)

The *C.B.* court held that "the notice provisions would not apply to an out-of-state placement with a *parent*." (*In re C.B., supra,* 188 Cal.App.4th at p. 1032, italics added.) Thus, "[p]lacement with an out-of-state parent *need not follow* ICPC procedure . . . ." (*In re John M.* (2006) 141 Cal.App.4th 1564, 1573–1575 [47 Cal.Rptr.3d 281], italics added, and cases cited therein.) The *C.B.* court quoted, " '[t]he ICPC . . . *requirement of advance approval from the receiving state* for a placement is clearly limited to cases of placement "in foster care or as a preliminary to a possible adoption . . . ." [Citation.] Regulations *requiring such advance approval* for placement with a parent are neither binding nor persuasive in light of the limitations expressed in the statute itself.' [Citation.]" (*In re C.B., supra,* at p. 1034, italics added.)

According to *In re C.B.* and *John M.*, and cases cited therein, the juvenile court need not comply with the notice provisions of the ICPC to place a California child with a parent living in another state. But, these cases are not authority for the proposition Fritz suggests, namely that a court must necessarily *ignore* an ICPC that was done *at the behest of the out-of-state parent,* simply because it was not statutorily required. Here, the court clearly based its decision at the 12-month review hearing on the proper criteria, namely its detriment finding under section 366.21, subdivision (f), as analyzed above. The juvenile court's determination that placement of B. in Fritz's custody would be detrimental to the child's "safety, protection, or physical or emotional well-being" (*ibid.*), is simply another way of stating that the child continued to require the juvenile court's protection. Only after Fritz's attorney argued that the ICPC did not apply to Fritz did the court raise the subject of the Texas authorities' refusal to supervise a placement there. Having *twice* learned that the Texas authorities recommended against placing B. with Fritz and refused to supervise a placement there, the juvenile court acted well within its discretion by refusing in "good conscience" to return B. to Fritz because the juvenile court in California would have no ability to continue to protect the child.

█ We reject Fritz's suggestion that the juvenile court could have ordered him back to California periodically. The juvenile court is vested with " 'very extensive discretion in determining what will be in the best interests of a child,' and that its determination will not be reversed save for clear abuse of that discretion. [Citation.]" (*In re Eric B.* (1987) 189 Cal.App.3d 996, 1005 [235 Cal.Rptr. 22].) In view of the seriousness of the allegations and Fritz's failure to make substantive progress in his case plan, the court was entitled to conclude that ordering Fritz back to California periodically would not allow for adequate supervision and that a Texas placement would not be in B.'s best interest. In view of the serious nature of the sustained allegations against Fritz, B.'s continued need for juvenile court protection, the lack of supervision by the Texas authorities, and the inability of the Department to supervise

a placement in Texas, the juvenile court acted well within its discretion when it concluded that it would be detrimental to B. to place him with Fritz.

## DISPOSITION

The order is affirmed.

Klein, P. J., and Kitching, J., concurred.