Argued and submitted July 23, reversed and remanded December 5, 2001

In the Matter of
Cody Lee Miller, a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF CURRY COUNTY,
*Appellant,*

*v.*

David CAMPBELL,
Kevin Miller, and Autumn Miller,
*Respondents.*

3836J; A110138

36 P3d 989

Michael C. Livingston, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

No appearance for respondents.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

## LINDER, J.

State Office for Services to Children and Families (SCF)[1] appeals from a juvenile court order and disposition terminating SCF's protective custody of the child and placing the child in the custody and control of David Campbell, his paternal grandfather. Specifically, SCF argues that the juvenile court erred when it placed the child in the custody and control of Campbell, a resident of Alaska, without complying with the Interstate Compact on the Placement of Children. ORS 417.200. We reverse and remand.

■ We review the facts *de novo*, ORS 419A.200(5), and the juvenile court's legal conclusions for errors of law. *See Trabosh v. Washington County*, 140 Or App 159, 163 n 6, 915 P2d 1011 (1996). When the child was eight months old, SCF filed a petition alleging that the child was within the juvenile court's jurisdiction. ORS 419B.100. The juvenile court placed the child in protective custody, "under the guardianship of [SCF]," pending adjudication of the petition. ORS 419B.150. SCF's second amended petition alleged, *inter alia*, that the child's father was incarcerated for delivery of a controlled substance and child neglect; that the child's mother was incarcerated for possession of a controlled substance and endangering the welfare of a child with narcotics; and that the child was endangered by continuing domestic disputes between the father and the mother.

After the juvenile court placed the child in protective custody with SCF, but before the jurisdictional hearing, Campbell successfully petitioned to intervene in the juvenile court proceedings so that he could be appointed the child's guardian. ORS 419B.115. Both parents consented to the proposed guardianship with Campbell, who testified at length regarding his desire and qualifications to act as the child's guardian, as well as his intention to take the child to Alaska.

Campbell, SCF, and the child's parents all agreed that placing the child with Campbell was in the child's best

[1] Although the caption in this case refers to the Juvenile Department of Curry County as the appellant, SCF is the appellant and we refer to SCF throughout.

interest. The parties, however, disagreed about the mechanics of such a placement. Campbell and both parents urged the court to terminate SCF's protective custody, to appoint Campbell guardian, and to allow him immediately to take the child to Alaska. SCF asked the court to leave the child in SCF's custody so that it could place the child with Campbell after following the procedures for placement set out in the interstate compact. In response, Campbell argued that, if the trial court placed the child with him, the interstate compact would not apply.

The juvenile court found the child to be within the court's jurisdiction, made the child a ward of the court, terminated SCF's protective custody, appointed Campbell to be the child's guardian pursuant to ORS 419B.370, and "immediately" placed the child "under the custody and control of * * * David Campbell, as Guardian." The court concluded that, because it was placing the child with Campbell, the child's grandfather and guardian, the interstate compact did not apply. In its written order, the court explained:

"[T]here will be a sending or bringing of the Child into the State of Alaska by David Campbell, who is a grandparent and guardian of the Child. The Court further finds that there will be a leaving of the Child by David Campbell, grandparent and guardian, in the State of Alaska with David Campbell, grandparent and guardian herein. The Court finds that pursuant to ORS 417.200, Interstate Compact on Placement of Children, Article VIII (a), this compact and provision does not apply to these events."

In other words, the juvenile court reasoned that all that the court was doing was appointing Campbell to be the child's guardian. Beyond that, it was Campbell who was taking the child to Alaska. Thus, in the juvenile court's view, the court was not "causing" the child to be sent to Alaska, and the interstate compact therefore did not apply. The juvenile court did not, however, discharge itself of further responsibility in the matter. To the contrary, the juvenile court: continued its wardship over the child; declared that the child, the parents, and Campbell, as guardian, were all subject to the court's continuing jurisdiction; directed the court-appointed special advocate (CASA) under the CASA program to continue to report to the court on the progress of the parents and the

child; approved visitation between the parents and the child pursuant to a court-approved plan; outlined Campbell's responsibilities to the child as the child's guardian; and requested SCF's ongoing involvement to provide services to the parents in an attempt to facilitate reintegration of the child into the parents' home.

SCF appeals, challenging the juvenile court's disposition and its legal conclusion regarding the applicability of the interstate compact.[2] Specifically, SCF argues that, by placing the child in Campbell's custody with the knowledge and understanding that Campbell would take the child to Alaska, the juvenile court caused the child to be sent to Alaska and was therefore required to comply with the interstate compact. Additionally, SCF argues that the exception in Article VIII(a) of the compact applies only to out-of-state placements initiated and carried out by close relatives, rather than those made at the direction or with the involvement of a "sending agency." SCF reasons that, due to the nature of the juvenile court's ongoing involvement in this case, the Article VIII(a) exception does not apply and that the juvenile court was required to comply with the compact. As we explain in greater detail below, we agree.

We begin our analysis with an overview of the interstate compact, focusing on the provisions at issue in this case. The interstate compact was drafted in the 1950s in response to problems encountered by state social service agencies when placing children across state lines. *See* The Secretariat to the Association of Administrators of the Interstate Compact on the Placement of Children, *Guidebook to the Interstate Compact on the Placement of Children*, 2 (2000). At that time, states lacked the authority to order services for children who were once in their jurisdiction but were subsequently transferred to a new home in another state. *Id.* Moreover, agencies found it difficult to coordinate the provision of services with states to which such children were sent. *Id.* In response to those difficulties, a group of state social service administrators drafted the interstate compact, which has

---

[2] Neither Campbell nor the child's parents filed a brief in support of the juvenile court's decision.

since been enacted by all 50 states, by the District of Columbia, and by the U.S. Virgin Islands. *Id.*

The purpose of the compact is to facilitate cooperation among member states so that, among other outcomes: a sending state can make an informed judgment as to the suitability of a proposed placement; the receiving state can adequately investigate a proposed placement; and "[e]ach child requiring placement shall receive the maximum opportunity to be placed in a suitable environment." ORS 417.200, Art I. The interstate compact accomplishes those purposes by requiring both the sending state and the receiving state to comply with a number of requirements before and after the placement.

Article III is the heart of the compact and contains the guidelines that govern when and how it applies. Subsection (a) specifies when a child placement is subject to the compact's requirements:

> "No sending agency shall send, bring, or cause to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article."

ORS 417.200, Art III(a). "Sending agency," in turn, is expressly defined in Article II of the compact to mean:

> "[A] party state, officer or employee thereof; a subdivision of a party state, or officer or employee thereof; *a court of a party state*; a person, corporation, association, charitable agency or other entity which sends, brings, or causes to be sent or brought any child to another party state."

*Id.*, Art II(b) (emphasis added). The requirements imposed on a sending agency under Article III include the sending agency's obligation to provide the receiving state with written notice of its intent to place a child in the receiving state. The notice must contain the identities of the child, the child's parents or legal guardian, and the person or institution with which the child is to be placed, as well as a statement of the reasons for the placement. *Id.*, Art III(b). Additionally, the child is not to be placed in the receiving state until "the appropriate public authorities * * * notify the sending agency

* * * that the proposed placement does not appear to be contrary to the interests of the child." *Id.*, Art III(d).

Article VIII of the compact provides a narrow exception to the compact's scope and exempts placements between certain private individuals, most of whom are relatives. Specifically, it provides:

> "This compact shall not apply to * * * [t]he sending or bringing of a child into a receiving state by a parent, step-parent, grandparent, adult brother or sister, adult uncle or aunt, or guardian and leaving the child with any such relative or nonagency guardian in the receiving state."

ORS 417.200, Art VIII(a). In other words, the interstate compact does not apply to private arrangements for a child's placement when those arrangements are made between a limited class of persons consisting primarily of close relatives and not brought about by a "sending agency."

With that background, we turn to SCF's arguments. SCF first contends that this is an Article III placement because the juvenile court is a sending agency and, as such, caused the child to be sent to Alaska.[3] The first half of SCF's contention is clearly correct. Article II(b) defines sending agency to include any "court of a party state." ORS 417.200, Art II(b). The juvenile court undoubtedly qualifies as a sending agency under that description.

The more arguable issue is whether the juvenile court, by appointing Campbell guardian with the knowledge and understanding that Campbell would take the child to Alaska, *caused* the child to be sent to Alaska. In that regard, it is instructive to recall that, absent the court's order appointing Campbell guardian, Campbell could not have legally returned to Alaska with the child. That is so because, before Campbell had any connection to these proceedings, the juvenile court had found the child to be within its jurisdiction and had made the child a ward of the court pursuant to ORS 419B.328. The court's wardship was ongoing. *See* ORS 419B.328(2) (court's wardship continues until, *inter alia*, the

---

[3] We note that there is no dispute in this case that the type of guardianship established by the court pursuant to ORS 419B.370 constitutes "foster care" for purposes of Article III(a) of the compact. ORS 417.200.

court dismisses the petition, the child is adopted, or the child reaches age 21). Similarly, until the court entered the order that the state now appeals, the child was under SCF's protective custody. Before entry of the disposition order, then, Campbell had no legal ability or authority to remove the child to Alaska without the permission of both SCF and the court. Nor did the child's parents have the legal authority to permit Campbell to do so.

Having found the child to be within its jurisdiction, the juvenile court was required to enter an order "directing the disposition to be made of the case." ORS 419B.325. After intervening in the proceeding, Campbell made it clear that, if appointed guardian, he intended to take the child with him to Alaska. The court's choices thus consisted of continuing the child in SCF's custody or appointing Campbell as the child's guardian, knowing that Campbell intended to take the child to Alaska. In appointing Campbell as guardian under ORS 419B.370, the juvenile court tacitly approved Campbell's proposal to take the child to Alaska. Moreover, Campbell gained the legal ability to follow that course of action only by force of the juvenile court's order appointing him guardian and terminating the child's custodial placement with SCF.

■     We agree with SCF that, in those circumstances, the interstate compact applied and the juvenile court was obligated to comply with its requirements.[4] Pursuant to the text of Article III(a), the compact extends to any sending agency that "send[s], bring[s], or *cause*[s] *to be sent or brought* into any other party state any child for placement." (Emphasis added.) The deliberate addition of the "causes to be sent or brought" language reflects the compact's concern not only with a sending agency's direct action in sending or bringing a child into another state, but also with actions that effectively, even if less directly, achieve the same thing.[5] That is plainly

---

[4] We express no opinion as to the compact's potential applicability to other types of guardianship arrangements. *See, e.g.,* ORS 419B.365 (permanent guardianships for child within juvenile court's jurisdiction); ORS chapter 125 (other guardianship arrangements).

[5] The verb "cause" means to serve as a cause, which in turn is a reference to "a person, thing, fact, or condition that brings about an effect or that produces or calls forth a resultant action or state * * * something that occasions or effects a result: the necessary antecedent of an effect: something that determines any motion or change or produces a phenomenon." *Webster's Third New Int'l Dictionary,* 356 (unabridged ed 1993).

what happened here. The juvenile court did not simply appoint Campbell a permanent guardian and wash its hands of the matter. Rather, the child remains a ward of the court, and the child, his parents, and Campbell continue to be subject to the court's jurisdiction. When the juvenile court opted to appoint Campbell to be the child's guardian under ORS 419B.370, with the knowledge and understanding that Campbell intended to take the child to Alaska, the juvenile court effectuated the child's placement in Alaska for purposes of Article III of the interstate compact as surely as if the juvenile court had done so by a direct means. So long as the child remained a ward of the court, neither Campbell nor the child's parents could have achieved the out-of-state placement without the juvenile court's active assistance and tacit approval of Campbell's proposal for placement. The juvenile court's order thus "caused" the child's placement in Alaska.

It follows, then, that the juvenile court was required to comply with the interstate compact. The court erred in failing to do so.

Reversed and remanded.