**In re Petition of T.M.J., J.A., Appellant.**

Nos. 04–FS–987, 04–FS–988
and 04–FS–1663.

District of Columbia Court of Appeals.

Argued June 28, 2005.
Decided July 14, 2005.

Madhavan K. Nair, for appellant.

Christopher J. Burke, with whom Eric H. Holder, Jr., was on the brief, Washington, DC, for T.M.J.*

Stacy L. Anderson, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Deputy Attorney General, were on the brief, for the District of Columbia.

Before FARRELL and RUIZ, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate Judge:

At issue here is a dispute between the adoptive mother (previously the foster parent) and a grandmother of a six-year-old boy, S.A. The trial judge, after an evidentiary hearing, waived the requirement of parental consent, *see* D.C.Code § 16–304(e) (2001), and granted the adoption petition of T.M.J. over the declared preference of the biological parents that S.A. be placed with his maternal grandmother, J.A., a Maryland resident who had filed a complaint for custody of the child. In dismissing J.A.'s request for custody, the trial judge ruled, *inter alia,* that the Interstate Compact on the Placement of Children (the ICPC or the Compact), D.C.Code §§ 4–1421 *et seq.* (2001), denied him authority to order placement of the child with the grandmother because the relevant Maryland social services agency— the Baltimore County Department of Social Services–Interstate Compact Office— had performed home studies and determined that placement of S.A. with the grandmother would be contrary to the best interests of the child.

J.A. appeals from the dismissal of her complaint for custody. Neither biological parent has appealed from the decree of adoption, though both have filed statements "supporting" J.A.'s appeal. The District of Columbia contends that, to the extent J.A. is challenging the adoption decree, she lacks standing to do so,[1] but concedes—correctly—that she has standing to challenge the trial judge's disposition of her custody complaint. As neither biological parent has appealed, the sole

---

* Messrs. Burke and Holder have performed the representation on appeal *pro bono publico,* for which the court thanks them.

1. The District cites, among other things, decisions of state courts holding that grandparents lack standing to challenge the adoption of their grandchildren. However, we leave resolution of the District's standing argument to a case where it would make a difference. Appellant's sole challenge to the adoption decree (as distinct from the denial of her complaint for custody) is that the trial judge gave inadequate consideration to the expressed preference of the biological parents that permanent custody of the child be given to her. *See In re T.J.,* 666 A.2d 1, 15 (D.C.1995) (explaining right of biological parent to have her "choice of a suitable custodian and the household in which her son should be reared" given "weighty consideration"). A determination that appellant had standing to assert that right would not avail her, because, as we explain in the text, the judge lacked authority under the ICPC to transfer custody to her.

issue we need address is whether the judge correctly ruled that, in the circumstances presented, the ICPC barred placement of the child with J.A. in Maryland.[2] The trial judge was correct.

 The ICPC is a uniform law that governs the placement of children across state lines. It has been adopted by all fifty states, the District of Columbia, and the Virgin Islands. *See In re Miller*, 178 Or.App. 271, 36 P.3d 989, 991 (2001). "[I]ntended to facilitate interstate adoption, thereby increasing the pool of acceptable homes for children in need of placement," B. Hartfield, *The Role of the Interstate Compact on the Placement of Children in Interstate Adoption*, 68 NEB. L. REV. 292, 293 (1989), the Compact "extends the jurisdictional reach of a party state into the borders of another party state for the purpose of investigating a proposed placement and supervising a placement once it has been made." *Id.* at 296. However, the ICPC prohibits a state from sending a child or causing a child to be sent into another party state "for placement in foster care or prior to a possible adoption, unless the sending state complies with each requirement set forth in this compact and applicable laws of the receiving state that govern the placement of children." D.C.Code § 4–1422, Art. III(a). In particular, before an interstate placement may be ordered, the receiving state must be given notice of the intended placement, including the name and address of the person or agency with whom the proposed placement is to be made and "[a] full statement of the reason for the proposed action and evidence of the authority for the proposed placement." *Id.*, Art. III(b)(3) & (4). That state may also request and is entitled to receive from the sending state "supporting or additional information necessary to carry out the purpose and policy of this compact." *Id.*, Art. III(c).[3] Of controlling significance, "[t]he child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate authority in the receiving state notifies the sending state, in writing, that the proposed placement does not appear to be contrary to the interests of the child." *Id.*, Art. III(d).

 After the child S.A. was placed under the protective supervision of the Supe-

---

**2.** The trial judge alternatively ruled that even if the ICPC did not bar the placement, he would not transfer custody to the grandmother, explaining that she "is not a suitable custodian for this child because of questions about her credibility [at the hearing], the lack of stability in her own life, her strained relationship with the birth mother, and general deficiencies in her personality and her sense of responsibility in the welfare of her grandchildren." Counsel for the adoptive mother asserts that this ruling provides an independent, fully sufficient basis for upholding the adoption despite the preference of the biological parents. The District, for its part, contends that we need not reach the merits of the judge's waiver of parental consent—including the issue of the grandmother's fitness as potential custodian—because much of the testimony from the hearing has not been transcribed due to mechanical malfunction, and appellant (the District further argues) has

failed to pursue the alternative means of reconstructing a trial record prescribed by Rule 10(c) of this court's rules. *See Cole v. United States*, 478 A.2d 277 (D.C.1984).

As will be seen, the trial judge's application of the ICPC was indisputably correct, and because this court has not had occasion before to interpret the Compact in a published opinion, we address that ruling and leave aside the alternative basis on which the judge also ruled.

**3.** One purpose and policy of the Compact is to ensure that "[t]he appropriate authority in a state where a child is to be placed may have full opportunity to ascertain the circumstances of the proposed placement in order to promote full compliance with applicable requirements for the protection of the child." D.C.Code § 4–1422, Art. I(2).

rior Court in November 1999,[4] the neglect judge, in conformity with the ICPC, asked Maryland officials to do a home study of the grandmother's home in Baltimore to determine her suitability as a custodian for the child. The result was a March 2002 report by the Maryland ICPC authority stating that placement of S.A. with J.A. would not be in the child's interest at that time.[5] Later, after the evidentiary hearing on T.M.J.'s petition to adopt, the trial judge continued the matter to give J.A. another chance to obtain ICPC approval as a custodian. In May 2004 the court received a second report from the Maryland authorities again concluding that "[p]lacement of [S.A.] with his grandmother ... is not appropriate at this time." The report noted that, as in the past, "[J.A.'s] compliance in completing this home study was marginal," and after discussing in detail her personal and home situation, it concluded that "[c]oncerns about [J.A.'s] employment stability, flexibility in her schedule, ability to meet her grandson's emotional needs, commitment to this process and safety of her neighborhood are all enough to create reasonable doubt about the appropriateness of this placement."

■ As the ICPC dictates, Maryland's refusal to approve placement of the child with J.A. barred the Superior Court from ordering that disposition. *Id.* Appellant's contrary argument that the trial judge was free to re-examine the evidence of her suitability and reject the Maryland administrative decision ignores the Compact as written and its purpose to insure compliance with the "applicable laws of the receiving state that govern the placement of children." *Id.*, Art. III(a). Disagreeing as appellant did with the results of the home studies, her remedy was to pursue whatever appeal Maryland provides from such decisions.[6] It was not to entreat the Superior Court to impose an unauthorized placement on another state.

■ Although one limitation on the reach of the ICPC is worth mentioning, it does not assist appellant. The Compact is inapplicable if "[a] child is sent or brought into a receiving state by his parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt, or his guardian, or if the child is left with the relative or nonagency guardian in the receiving state." *Id.*, Art. VIII(1). The Compact, that is, "does not apply to private arrangements for a child's placement when those arrangements are made between a limited class of persons consisting primarily of close relatives and not brought about by a

---

**4.** That action, and the subsequent placement of the child with the foster parent, T.M.J., took place following an adjudication of neglect based in part on the biological mother's repeated use of unlawful drugs.

**5.** The report concluded that

[J.A.'s] financial and medical status remain unclear. Her doctor ... stated on the medical that [J.A.] is capable of caring for [S.A.] "as long as she continues to receive treatment for mental health," but by [J.A.'s] own admission she has not been in treatment or on medication for depression/anxiety during the course of this homestudy.... Neither [J.A. nor] her doctor have provided any specific information on how [J.A.] will be

able to cope with [S.A.'s] special needs. This homestudy has already gone on far longer than the usual two months [because J.A. had been "extremely slow to comply with homestudy requirements"]—we do not feel that additional time should be given.

**6.** *See, e.g.*, Md. Code Ann., State Gov't § 10–222 (2004) (Maryland Administrative Procedure Act); *id.*, Fam. Law § 5–330 (Maryland appeal procedure regarding adoption). *See also Green v. Division of Family Servs.*, 864 A.2d 921, 928 (Del.2004) (custody-claimants who received adverse home study evaluations in Virginia "could have appealed those decisions in their home state of Virginia").

'sending agency.'" *Miller,* 36 P.3d at 991. The proposed placement of S.A. with J.A., however, was not by "private arrangement." S.A. had been in the legal custody of the District's Child and Family Services Agency since 1999, where he was subject to the continuing jurisdiction of the Superior Court. *See* D.C.Code § 16–2303 (2001). "[W]hen the sending agency is a child protective services agency acting through the state, as it is here, and the child is [proposed to be] placed with a ... family member who does not have full custodial rights to or guardianship of the child, the ICPC applies to that out-of-state placement." *Arizona Dep't of Econ. Sec. v. Leonardo,* 200 Ariz. 74, 22 P.3d 513, 518 (Ct.App.2001). *See also* Assoc. of Administrators of the ICPC, Regulation 3, paras. 1 and 6; *Miller,* 36 P.3d at 992–93 (holding that the ICPC applied because "[s]o long as the child remained a ward of the court, neither [the guardian] nor the child's parents could have achieved the out-of-state placement without the juvenile court's active assistance and tacit approval of [the guardian's] proposal for placement.").

In sum, had the trial judge granted J.A.'s request for legal custody, he would have "cause[d the child] to be sent into [another] party state ... for placement" in a manner that violated the ICPC. *See* D.C.Code § 4–1422, Art. III(a) & (d); *Department of Health & Rehabilitative Servs. v. J.M.L.,* 455 So.2d 571 (Fla.Dist. Ct.App.1984) (holding the ICPC applicable to an out-of-state placement of children with their grandparents and reversing a placement order with directions that no such placement should occur except in compliance with the Compact).

*Affirmed.*