### IN the INTEREST OF C.R.-A.A., a Child

No. 04-16-00782-CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: May 24, 2017

---

APPELLANT ATTORNEY: Ross Elliott, Rogers & Moore, 309 Water Street, Suite 402, Boerne, TX 78006.

APPELLEE ATTORNEY: Leslie Capace, Texas Department of Family and Protective Services, 2401 Ridgepoint, Austin, TX 78754, Brenda Kinsler, Texas Department of Family and Protective Services, 2401 Ridgepoint Drive, Austin, TX 78754, Charles F. Wetherbee, P.O. Box 695, Boerne, TX 78006-0695, M. Patrick Maguire, M. Patrick Maguire, P.C., 945 Barnett St., Kerrville, TX 78028.

Sitting: Sandee Bryan Marion, Chief Justice, Marialyn Barnard, Justice, Irene Rios, Justice

## OPINION

Opinion by: Marialyn Barnard, Justice

After the Texas Department of Family and Protective Services ("the Department") initiated termination proceedings against the parents of C.R.-A.A., but before the final hearing, the associate judge—based on a motion filed by Father—signed an order in which she determined: (1) Oklahoma has exclusive continuing jurisdiction over C.R.-A.A. under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"); (2) C.R.-A.A. should be placed with Father in Oklahoma pursuant to the Interstate Compact on the Placement of Children ("ICPC"); and (3) the Department should be dismissed as C.R.-A.A.'s temporary managing conservator. The trial court adopted the associate judge's order after a de novo hearing. On appeal, appellant Mother contends the trial court erred in adopting the associate judge's order because: (1) Oklahoma does not have jurisdiction pursuant to the UCCJEA; and (2) the trial court

failed to comply with the mandates of the ICPC before placing the child with Father. We reverse the trial court's order and remand this matter for further proceedings consistent with this court's opinion.

## BACKGROUND

Mother, a Texas resident, and Father, an Oklahoma resident, are the parents of C.R.-A.A. C.R.-A.A.'s parents are not married and do not cohabitate. In 2015, the Department filed a petition seeking termination of Mother's and Father's parental rights in the event C.R.-A.A. could not be safely reunified with either parent. The associate judge granted the Department's request for emergency removal. A week later, after a "full adversary hearing," the associate judge signed an agreed temporary order naming the Department as C.R.-A.A.'s temporary managing conservator. Service plans were prepared for Mother and Father. The matter proceeded with the Department completing the required evaluations and filing the mandated progress reports, and the trial court conducting the statutorily-required status hearings. The associate judge determined in several orders that both parents had "partially demonstrated adequate and appropriate compliance with" their individual service plans. The associate judge retained the matter on her docket pursuant to several orders, ultimately extending the dismissal date to September 2016.

Then, in July 2016, Father filed an amended answer, a cross-petition, and a "Motion to Place Child." In the motion, Father referenced an Oklahoma district court order establishing his paternity of C.R.-A.A. and mandating child support and asked the associate judge to place C.R.-A.A. with him as the "fit, non-offending parent" pursuant to the ICPC. Documents in the record establish that in December 2014, before the Department filed its March 2015 original petition, an Oklahoma district court rendered an agreed order—signed by Mother and Father—recognizing Father as C.R.-A.A.'s biological father based on genetic testing and establishing his support obligations relative to C.R.-A.A.

After Father filed his initial "Motion to Place Child," he filed an amended motion and a "Motion to Have Court Consult with the Oklahoma District Court." In the motion seeking consultation, Father asserts that on August 1, 2016, the Department took the position that the Oklahoma district court may have jurisdiction over this matter under the UCCJEA based on the Oklahoma court's prior paternity and child support order. However, Father argued the issue of conservatorship should be decided by the Texas courts because although C.R.-A.A. was conceived in Oklahoma, he was born in Texas and has lived in Texas his entire life, all of the facts relating to removal of C.R.-A.A. occurred in Texas, Oklahoma courts have taken no action in this matter other than to collect and forward child support, and nearly all of the witnesses reside in Texas—specifically Kerr County. Father asked the associate judge to contact the Oklahoma trial court "to request authority to enter permanent conservatorship and/or termination orders in this proceeding." Father asked for alternative relief as well, requesting temporary orders awarding possession of C.R.-A.A. to him for at least six months to allow the Oklahoma court to render appropriate conservatorship orders.

The associate judge agreed to hear Father's motions on August 11, 2016, before proceeding to a final hearing. At the hearing, the Department stated that based on its interpretation of the ICPC and its accompanying regulations, unless Father is found to be unfit, he is considered a "nonoffending" parent and C.R.-A.A. should

be immediately placed with him and the Department dismissed as temporary managing conservator. Moreover, the Department argued the prior Oklahoma orders on paternity and support gave Oklahoma exclusive continuing jurisdiction over the matter pursuant to the UCCJEA. Father's ad litem agreed with the Department's assessment, as did the child's guardian ad litem from CASA.

Mother's attorney ad litem argued there was no need—legally or factually—to place C.R.-A.A. with Father in Oklahoma. C.R.-A.A.'s attorney ad litem agreed, asking for a "monitored return" of the child to Mother. He also asked the associate judge, as had Father in his written motion, to consult with the Oklahoma district court prior to any determination in the matter.

After hearing the arguments, the associate judge stated, in pertinent part:

> [I]t's the Court's position at this time that under both the UCCJEA Federal Statute and the ICPC Federal Statute that the Court is required to place the child with the non-offending parent, unless it can be established that parent is unfit to care for the child. So at this point, I'm going to entertain testimony.

The associate judge then proceeded to hear testimony and receive evidence as to whether Father is unfit under the ICPC.

To establish Father is unfit, C.R.-A.A.'s attorney ad litem called Father and C.R.-A.A.'s current foster mother, J.C., a friend of Mother. Thereafter, Father called Candice Jones, the Department caseworker. After the testimony of the three witnesses, the parties presented closing statements. After hearing the evidence and the parties' arguments, the associate judge stated on the record that both the UCCJEA and ICPC are applicable, but even if the UCCJEA is inapplicable, the ICPC

mandates placement "if there is a nonoffending parent" who is not unfit. The associate judge stated there was no evidence that Father is unfit and Father established "he is making, really, kind of above-and beyond efforts to be reunified with his son and to facilitate services and support that he would need if the child is placed there." The associate judge then verbally ordered C.R.-A.A. placed with Father, noting the Oklahoma child support order would need to be modified. Ultimately, the associate judge signed a written order that states, in pertinent part:

> **IT IS ORDERED** that the **TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES** is released from its appointment as managing conservator with regards to the children [sic], [**C.R.-A.A.**].
>
> The Court **FINDS** that [**Father**] is a non-offending, out of state parent as defined in the Interstate Compact on the Placement of Children. The Court further finds that the State of Oklahoma has continuing, exclusive jurisdiction for the child, [**C.R.-A.A.**], and that any future litigation involving custody or support of the child, [**C.R.-A.A.**], will be conducted in said Court. The Court further **FINDS** that [**Father**] is a fit parent and **ORDERS** placement with him.

The associate judge also released the attorneys ad litem and Hill Country CASA from their duties in this matter. After the associate judge's order, Mother requested a de novo hearing, challenging the associate judge's order. The trial court set the de novo hearing for November 2016.

The de novo hearing began with the Department providing the trial court with the background of the case. The parties then presented legal argument regarding the applicability and effect of the UC-

CJEA and the ICPC.[1] After hearing the arguments, the trial court adopted the decision of the associate judge. Mother then perfected this appeal.

## ANALYSIS

On appeal, Mother contends the trial court misconstrued both the effect of the Oklahoma district court's paternity and child support order under the UCCJEA and the requirements for placement under the ICPC. According to Mother, these errors resulted in the trial court improperly ceding jurisdiction to Oklahoma, improperly dismissing the underlying case, and placing C.R.-A.A. with Father without first having complied with certain ICPC requirements. In response to Mother's argument, the Department asserts the law is contrary to Mother's contentions. Specifically, the Department argues the ICPC does not apply, but the trial court was within its discretion to place C.R.-A.A. with Father and dismiss the Department's case.

### Does Oklahoma Have Continuing, Exclusive Jurisdiction Under the UCCJEA?

The associate judge determined Oklahoma has exclusive continuing jurisdiction over the custody issues relating to C.R.-A.A. This determination was adopted by the trial court. Mother argues this finding is erroneous because at the time of the associate judge's order, Texas was C.R.-A.A.'s "home state" under the Texas Family Code ("the Code"), and the Oklahoma district court's order regarding paternity

and child support did not constitute a "child custody determination" for purposes of vesting that court with exclusive continuing jurisdiction. *See* Tex. Fam. Code Ann. § 152.201(a) (West 2014). We agree.

### Standard of Review

The existence of subject matter jurisdiction with regard to child custody matters is a question of law, which we review de novo. *See Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005). We review the trial court's interpretation of applicable statutes—in this case jurisdictional statutes under the Code—de novo. *See id.*; *Berwick v. Wagner*, 336 S.W.3d 805, 819 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Our objective is to determine and give effect to the legislature's intent. *Powell*, 165 S.W.3d at 324; *Berwick*, 336 S.W.3d at 819.

### Application

In Texas, subject matter jurisdiction over child custody issues is governed by the UCCJEA, which is codified at section 152.001–.317 of the Code. *See* Tex. Fam. Code Ann. § 152.001–.317. Here, Mother is challenging the trial court's determination that the Oklahoma district court had exclusive continuing jurisdiction pursuant to section 152.202. *Id.* § 152.202(a). That section provides that a court that has made a "child custody determination" pursuant to sections 152.201 or 152.203 has exclusive and continuing jurisdiction over the child custody matter until there is a determination that: (1) neither the child and one

---

1. After several minutes of argument, Father's attorney ad litem told the trial court he was prepared to introduce telephonic testimony from C.R.-A.A.'s current therapist, Rene Gougler, who would recommend the child remain in Oklahoma. The trial court allowed the therapist to testify, and thereafter, Father's attorney called Mother as a witness. After a few questions regarding Mother's placement on probation for a felony offense, both the Department and Mother's attorney ad litem objected to additional testimony, arguing the purpose of the de novo hearing was simply to determine whether the associate judge properly acted with regard to the legal issues of jurisdiction under the UCCJEA and placement under the ICPC. The trial court agreed.

parent, nor the child and a person acting as parent, have a significant connection with the state and substantial evidence with regard to the matter is no longer available in the state; or (2) the court or a court of another state determines the child, his parents, and any other person acting as parent no longer reside in the state.[2] *Id.*; *see id.* §§ 152.201, 152.203. Thus, we must determine whether Oklahoma, by virtue of its paternity and support order made a "child custody determination," as that term is defined in section 152.102 of the Code. *See id.* §§ 152.102, 152.202(a).

■ Both the Texas and Oklahoma versions of UCCJEA define a "child custody determination" as:

[A] judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child. The term includes permanent, temporary, initial, and modification orders. The term does not include an order relating to child support or another monetary obligation of an individual.

*Compare* OKLA. STAT. ANN. § 551-102(3) *with* TEX. FAM. CODE ANN. § 152.102(3). The Oklahoma court order is entitled "Agreed Order Determining Parentage and Child Support Obligation." It names Father as the biological father of C.R.-A.A. based on genetic testing and orders Father to pay child support in the amount of $222.50 per month and past child support in the amount of $7,565.00 in installments of $76.50 per month. The order further requires Father to pay $62.50 each month for medical expenses. The order does not purport to determine issues of custody—temporary or permanent—or visitation. In fact, the only use of the term "custody" is

an identifying reference to Mother as the "custodial person" and to Father as the "non-custodial parent." These appear to be nothing more than generic references describing who has current possession of the child.

■ By its terms, section 152.102(3) provides that a child custody determination does *not* include an order relating to child support. *See* TEX. FAM. CODE ANN. § 152.102(3). As Texas courts have recognized, a court's jurisdiction to hear a child support issue does not confer jurisdiction upon that court to determine issues of custody or visitation. *In re Salminen*, 492 S.W.3d 31, 38 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *In re M.I.M.*, 370 S.W.3d 94, 97 (Tex. App.—Dallas 2012, pet. denied)). This is because the basis of jurisdiction in child support cases is very different from that of child custody cases. *Salminen*, 492 S.W.3d at 38 (comparing *Kulko v. Superior Ct.*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (holding jurisdiction in child support cases is based on minimum contacts of obligor with forum state) *with May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953) (holding jurisdiction on child custody cases is generally based on child's domicile)). Thus, the Oklahoma court's order requiring Father to pay child support did not confer exclusive continuing jurisdiction on the Oklahoma court.

■ The Oklahoma order also determined paternity. Under the facts of this case, we hold that determination was not a child custody determination under section 152.102(3) of the Code. In *Berwick*, the appellate court had to determine whether a California paternity judgment could be considered a child custody determination

---

**2.** Oklahoma has also adopted the UCCJEA. *See* 43 OKLA. STAT. ANN. tit.43, §§ 551-101–.317. The Oklahoma provision governing exclusive

continuing jurisdiction mirrors the Texas statute. *Compare id.* § 551-202 *with* TEX. FAM. CODE ANN. § 152.202(a).

for registration purposes under section 152.305 of the Code when the judgment was "silent as to the issue of custody."[3] 336 S.W.3d at 810. The appellant argued the absence of an express adjudication of custody precluded a finding that the judgment was a child custody determination. *Id.* at 811. The appellee claimed that an examination of the judgment revealed it did more than merely establish paternity; rather, it expressly adjudicated possessory rights to the child between the presumptive parents (a surrogate and her husband) and the intended parents (appellant and appellee). *Id.* The appellate court concluded the trial court properly determined, under the facts of the case, that the California judgment constituted a child custody determination "because it resulted from proceedings in which legal custody, physical custody, or visitation [was] an issue between the presumptive and intended parents." *Id.* (citing Tex. Fam. Code Ann. § 152.102).

We find *Berwick* instructive. Here, there is nothing in the Oklahoma court order or in the record before us to suggest the Oklahoma order "resulted from proceedings in which legal custody, physical custody, or visitation [was] an issue between the presumptive and intended parents." *See id.* Unlike the *Berwick* order, the Oklahoma order did not "expressly adjudicate[ ] possessory rights to the child," and there is nothing to suggest an adjudication on custody or visitation was sought. *See id.* Accordingly, we hold based on the facts of this case the Oklahoma order—insofar as it related to paternity—does not constitute a child custody determination under section 152.102(3) of the Code. *See id.*; *see also* Tex. Fam. Code Ann. § 152.102(3).

Based on the foregoing, we hold the Oklahoma district court did not acquire exclusive continuing jurisdiction over this matter based on its 2014 paternity and child support order. Thus, in the absence of jurisdiction based on the Oklahoma order, we must decide which state—Oklahoma or Texas—had jurisdiction over custody matters at the time of the associate judge's order and its subsequent adoption by the trial court.

■ Under section 152.201 of the Code, a child's home state—"the state in which the child lived with a parent ... for at least six consecutive months immediately before the commencement of a child custody proceeding"—has primary jurisdiction in child custody proceedings. Tex. Fam. Code Ann. §§ 152.102(7), 152.201(a)(1). The record shows the custody proceeding in this case began when the Department filed its original petition on March 4, 2015, in Kerr County, Texas. *See id.* §§ 152.102(4) (defining "child custody proceeding" to include a proceeding for termination of parental rights). It is undisputed C.R.-A.A. was born in Texas and lived in Texas with Mother from the time of his birth until he was removed and placed in foster care after the Department's petition was filed. At the time the petition was filed, C.R.-A.A. was just over three years old. Based on these facts, Texas is C.R.-A.A.'s home state. *See id.* §§ 152.102(7) Moreover, other than arguments regarding the effect of the 2014 Oklahoma court order disposed of above, there is nothing to suggest any other court has jurisdiction over custody matters involving C.R.-A.A. *See id.* §§ 152.201(a)(2), (3), (4). Because Texas was the child's home state, the Texas court had jurisdiction to make the initial custody determination with regard to C.R.-A.A.,

3. The definition of "child custody determination" in section 152.102(3) is applicable to both sections 152.202 and 152.305.

which it did when the associate judge signed orders regarding C.R.-A.A.'s placement after the filing of the Department's original petition.

Based the analysis above, we hold the trial court erred in determining that under the UCCJEA, Oklahoma has exclusive continuing jurisdiction over C.R.-A.A. The 2014 Oklahoma paternity and support order was not a "child custody determination" and the record establishes Texas was C.R.-A.A.'s home state before the Department commenced its termination action. At the time of the associate judge's order, the Texas court had jurisdiction over the custody matter involving C.R.-A.A.

### Is the ICPC Applicable?

Mother contends the trial court erred by dismissing this case after placing C.R.-A.A. with Father without first obtaining a home study pursuant to the ICPC. In other words, Mother contends the trial court erred in placing C.R.-A.A. with Father without complying with the mandates of the ICPC. However, before we can determine whether the trial court erred as suggested by Mother, we must first determine whether the ICPC is applicable in this case, i.e., when the placement across state lines is with a natural parent. This is a case of first impression in the Texas courts.[4]

■ The ICPC is a uniform law that governs the placement of children across state lines. *E.g., In re T.M.J.*, 878 A.2d 1200, 1202 (D.C. 2005); *In re S.R.C.-Q.*, 52 Kan.App.2d 454, 367 P.3d 1276, 1279 (2016). A group of social service administrators drafted the ICPC in the 1950s to address the problems associated with interstate adoption and foster care placements by social service agencies. *E.g., In re Alexis O.*, 157 N.H. 781, 959 A.2d 176, 183 (2008); *see State ex rel. Juvenile Dep't of Curry Cnty. v. Campbell*, 178 Or.App. 271, 36 P.3d 989, 991 (2008); *In re Ca.R.*, 191 Wash.App. 601, 365 P.3d 186, 201 (2015); *see also* Kimberly M. Butler, *Child Welfare—Outside the Interstate Company on the Placement of Children—Placement of a Child with a Natural Parent*, 37 Vill. L. Rev. 896 (1992). It has been enacted in all fifty states.[5] *See, e.g., J.D.S. v. Franks*, 182 Ariz. 81, 893 P.2d 732, 740 (1995) (en banc); *S.R.C.-Q.*, 367 P.3d at 1279; *Campbell*, 36 P.3d at 991; *Ca.R.*, 365 P.3d at 201. Texas adopted the ICPC in 1975. Acts of May 29, 1975, 64th Leg., R.S., ch. 697, 1975 Tex. Gen. Laws 2166 (current version at Tex. Fam. Code Ann. § 162.102); *see In re A.L.H.*, Nos. 14-16-00556 & 14-16-00578-

---

4. Mother contends this is not a case of first impression, arguing several Texas courts have implicitly determined the applicability of the ICPC under these circumstances. In the cases cited by Mother, and other Texas cases applying the ICPC, the applicability of the statute was either not preserved, *see O.L. v. Tex. Dep't of Family & Protective Servs.*, 460 S.W.3d 640, 655 (Tex. App.—El Paso 2014, pet. denied), involved an interstate placement with a nonparent, *see In re B.C.S.*, 479 S.W.3d 918, 922 (Tex. App.—El Paso, 2015, no pet.); *In re L.E.R.*, No. 14-15-00205-CV, 2015 WL 3918062, at *3 (Tex. App.—Houston [14th Dist.] June 25, 2015, no pet.) (mem. op.); *In re J.D.S.*, No. 01-10-00767-CV, 2011 WL 4398554, at *1 (Tex. App.—Houston [1st Dist.] Sept. 22, 2011, no pet.) (mem. op), or

the court simply assumed the ICPC applied to interstate placements with parents without analyzing the issue. *See H.N. v. Tex. Dep't of Family & Protective Servs.*, 397 S.W.3d 802, 807 (Tex. App.—El Paso 2013, no pet.); *In re S.W.*, No. 2012 WL 3115749, at *3 (Tex. App.—Fort Worth, 2012, no pet.) (mem. op.); *In re Northrop*, 305 S.W.3d 172, 177 n. 4 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Broyles v. Ashworth*, 782 S.W.2d 31, 32 (Tex. App.—Fort Worth, orig. proceeding).

5. It has also been adopted by the District of Columbia and the United States Virgin Islands. *E.g., T.M.J.*, 878 A.2d at 1202; *In re Miller*, 178 Or.App. 271, 36 P.3d 989, 991 (2001); *Ca.R.*, 365 P.3d at 201.

CV, 515 S.W.3d 60, 73–74, 2017 WL 103927, at *5 (Tex. App.—Houston [1st Dist.] Jan. 10, 2017, pet. filed); *In re B.C.S.*, 479 S.W.3d 918, 922 n.2 (Tex. App.—El Paso 2015, no pet.); *In re Northrop*, 305 S.W.3d 172, 177 n.4 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The purpose of the ICPC is for states to cooperate with each other in placing children outside their home state. TEX. FAM. CODE ANN. § 162.102 (Art. I).

The heart of the ICPC is Article III, which contains the guidelines governing when and how it applies. *Id.* (Art. III). Subsection (a) sets out the situations to which the ICPC applies:

> No sending agency shall send, bring, or cause to be sent or brought into any other party state any child *for placement in foster care or as a preliminary to a possible adoption* unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable law of the receiving state governing the placement of children therein.

*Id.* (Art. III(a)) (emphasis added). In addition to the ten articles in the ICPC, the Association of Administrators of the Interstate Compact on the Placement of Children ("AAICPC"), the "officers" described in Article VII of the ICPC, has promulgated various regulations designed to accompany the ICPC.[6] *See id.* (Art. VII) (entitled "Compact Administrator" and stating executive head of each jurisdiction party to ICPC shall designate officer to be general coordinator of activities under ICPC in his jurisdiction and who, acting jointly with like officers of other jurisdictions, shall

have power to promulgate rules and regulations "to carry out more effectively the terms and provisions" of ICPC). These regulations are found at the American Public Human Services Association's official website. *See* www.aphsa.org/content/AAICPC/en/home.html. Regulation 3, as amended effective October 1, 2011, is relied upon by the parties in this case and states, in pertinent part:

> 2. Placement categories requiring compliance with ICPC: Placement of a child requires compliance with the [ICPC] if such placement is made under one of the following four types of placement categories:
>
> (a) Four types of placement categories
>
>      * * *
>
> (3) *Placements with parents and relatives* when a parent or relative is not making the placement as defined in Article VIII(a) 'Limitations.' " [7]

*Id.* at 3.2(a)(3) (emphasis added). As previously noted, the specific terms of Article III(a) of the ICPC as enacted in Texas apply only to interstate placements of children with *foster parents or as a precursor to adoption,* TEX. FAM. CODE ANN. § 162.102 (Art. III(a)). The ICPC does not, based on the language in Article III(a), apply to interstate placements of children with a parent. However, Regulation 3 extends and expands the application of the ICPC to out-of-state placements of children with parents when a parent is not making the placement. *See* www.aphsa.org/content/AAICPC/en/home.html.

Mother argues, based on the language of Regulation 3.2(a)(3), the ICPC is applica-

---

6. In Texas, the ICPC administrator is the executive director of the Texas Department of Protective and Regulatory Services. 40 TEX. ADMIN. CODE § 700.1901(d) (1995) (Tex. Dep't of Protective & Regulatory Servs.).

7. Article VIIII(a) states the ICPC does not apply to the sending or bringing of a child into a receiving state by his parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt, or his guardian and leaving the child with such relative or nonagency guardian in the receiving state.

ble here, thereby requiring compliance with all of the mandates of the ICPC regarding interstate placements, including a home study. *See id.* The Department, on the other hand, contends the ICPC is inapplicable, but its argument is likewise reliant on the application of the Regulations, specifically Regulation 3.3(a). *See id.* Regulation 3.3(a) states that when the following requirements are met, the placement is "without ICPC protection":

> When the court places the child with a parent from whom the child was not removed, and the court has no evidence that the parent is unfit, does not seek any evidence from the receiving state that the parent is either fit or unfit, and the court relinquishes jurisdiction over the child immediately upon placement with the parent.

*Id.* According to the Department, because (1) C.R.-A.A. was not removed from Father, (2) there is no evidence Father is unfit, (3) no evidence was sought from Oklahoma regarding Father's fitness, and (4) the associate judge relinquished jurisdiction over C.R.-A.A., the placement with Father does not mandate compliance with the protection procedures of the ICPC. *See id.* Although we agree with the Department that the ICPC is inapplicable here, we do so because the plain language of Article III(a) establishes it is inapplicable to an interstate placement of a child with a parent, not because of the language in Regulation 3.3(a). *See* Tex. Fam. Code Ann. § 162.102 (Art. III(a)).

### *Standard of Review*

In construing a statute, our primary objective is to give effect to the Legislature's intent, which is determined first and foremost by the language of the statute itself. *BCCA Appeal Grp., Inc. v. City of Houston, Tex.*, 496 S.W.3d 1, 8 (Tex. 2016); *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631–32 (Tex.

2008). When the words of a statute are unambiguous, we look to the plain meaning of the statute. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). When there is no ambiguity, "it is inappropriate to resort to rules of construction or extrinsic aids to construe the language." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008). Courts have a duty to "resist revising a statute under the guise of interpreting it." *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013).

### *Application*

As noted above, the application of Article III(a) of the ICPC to an interstate child placement with a parent is a question of first impression in this state. However, numerous other states and at least one federal circuit court have addressed the issue with differing outcomes.

Several states, including Arizona, Delaware, Florida, Massachusetts, New York, and Oregon, have determined the ICPC applies to the interstate placement of a child with a natural parent. However, these courts do not always agree with regard to the rationale for applying the Article III(a) to parental placements. For example, Arizona courts have held the ICPC applies to interstate placement of children with a parent based on Regulation 3, holding it is applicable as it is consistent with and serves the policy and purpose of the ICPC to protect children who are subject to placement in another state. *E.g., Ariz. Dep't of Econ. Sec. v. Stanford*, 234 Ariz. 477, 323 P.3d 760 (2014); *Ariz. Dep't of Econ. Sec. v. Leonardo*, 200 Ariz. 74, 22 P.3d 513, 522 (2001). The Delaware Supreme Court held likewise and for the same reasons cited by the Arizona courts. *Green v. Div. of Family Servs.*, 864 A.2d 921, 927 (Del. 2004). Finally, in a footnote, the Oregon Court of Appeals stated the ICPC is applicable when children are sent

to another state for placement with parents or relatives—as long as someone other than a parent makes the placement. *State ex rel. Juvenile Dep't of Clackamas Cnty. v. Smith*, 107 Or.App. 129, 811 P.2d 145, 147 n.4 (1991, rev. denied). In support of this position, the court cited an article from the Oregon State Bar Association's Juvenile Handbook. *Id.*

Although Massachusetts courts reached the same conclusion as the courts cited above, they did so at least in part based on specific a Massachusetts regulation. *E.g.*, *In re Warren*, 44 Mass.App.Ct. 620, 693 N.E.2d 1021, 1024 (1998, rev. denied). The regulation relied upon provides that whenever a state agency has custody of a child and then places the child with a parent in another state, this is a placement under the ICPC. *Id.* The Florida courts also hold the ICPC applies to interstate placements with a parent, but do so by analogizing foster care placements to parental placements made by a court:

> "In such circumstances, the parent's situation is not custody or possession as a matter of parental right, but rather it is the same as the position of a foster parent. In both instances they are caregivers only because of the authority conferred to them by the state acting through the court. When a child is with a caregiver under these circumstances, the child is in foster care."

*Dep't of Children & Families v. C.T.*, 144 So.3d 684, 686 (Fla. Dist. Ct. App. 2014) (quoting *H.P. v. Dep't of Children & Families*, 838 So.2d 583, 586 (Fla. Dist. Ct. App. 2003)). The court also reasoned that once a court has custody of a child, it would be negligent to place the child out of state—even with a parent—without some indication the parent is able to care for the child. *Dep't of Children & Families v. Benway*, 745 So.2d 437, 439 (Fla. Dist. Ct. App. 1999).

New York courts have also determined the ICPC applies to out-of-state placements with a parent. *E.g.*, *In re Roosevelt Mc., Jr.*, 118 A.D.3d 1006, 989 N.Y.S.2d 89, 89 (2014); *Faison v. Capozello*, 50 A.D.3d 797, 856 N.Y.S.2d 179, 180 (2008). These courts reasoned the ICPC applied to out-of-state placements of children with a natural parent when, under the facts of the case, the best interests of the children warranted application of the ICPC. *E.g.*, *Roosevelt Mc.*, 989 N.Y.S.2d at 89; *Faison*, 856 N.Y.S.2d at 180.

On the other hand, several states have rejected application of the ICPC to interstate placement of a child with a natural parent, as has the Third Circuit Court of Appeals. *See, e.g.*, *McComb v. Wambaugh*, 934 F.2d 474, 482 (3d Cir. 1991); *Ark. Dep't of Human Servs. v. Huff*, 347 Ark. 553, 65 S.W.3d 880, 886–88 (2002); *In re C.B.*, 188 Cal.App.4th 1024, 116 Cal.Rptr.3d 294, 299–302 (2010); *In re Emoni W.*, 305 Conn. 723, 48 A.3d 1, 6–11 (2012); *S.R.C.-Q.*, 367 P.3d at 1281–82; *In re Alexis O.*, 157 N.H. 781, 959 A.2d 176, 181–83 (2008); *In re D.F.-M.*, 157 Wash.App. 179, 236 P.3d 961, 966–67 (2010, rev. denied). In rejecting application of the ICPC to placements of children with parents, these courts reasoned—at least in part—that the plain language of Article III precluded application of the ICPC in parental situations and Regulation 3 is inapplicable because it is contrary to the unambiguous, plain language of Article III. *McComb*, 934 F.2d at 482; *Huff*, 65 S.W.3d at 886–88; *C.B.*, 116 Cal.Rptr.3d at 299–302; *Emoni W.*, 48 A.3d at 6–11; *S.R.C.-Q.*, 367 P.3d at 1281–82; *Alexis O.*, 959 A.2d at 181–83; *D.F.-M.*, 236 P.3d at 966–67. We agree with the holdings and reasoning of these courts, and find *Alexis O.* instructive.

In *Alexis O.*, the court began its analysis by stating it had to construe the plain language of the ICPC to determine wheth-

er the compact applied to interstate parental placements. 959 A.2d at 181. The court then noted the purpose of the ICPC is to promote cooperation and information sharing among member states to ensure that children who require placement "receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care." *Id.*; *see* TEX. FAM. CODE ANN. § 162.102 (Art. I). The court recognized the ICPC is to be construed liberally to effect is purposes. *Alexis O.*, 959 A.2d at 181; *see* TEX. FAM. CODE ANN. § 162.102 (Art. X).

The New Hampshire Supreme Court then described the ten articles of the ICPC. *Alexis O.*, 959 A.2d at 181; *see* TEX. FAM. CODE ANN. § 162.102. Article III(a) states the ICPC applies to the interstate "placement" of children in foster care or for purposes of adoption. *Alexis O.*, 959 A.2d at 181; *see* TEX. FAM. CODE ANN. § 162.102 (Art. III(a)). Article II(d) defines "placement" as "the arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution."[8] *Alexis O.*, 959 A.2d at 181; *see* TEX. FAM. CODE ANN. § 162.102 (Art. II(d)). The other provisions of the ICPC—except for Article VIII—concern penalties for illegal placement, retention of jurisdiction by the sending agency, care of delinquent children, the appointment of ICPC administrators, enactment and withdrawal by member states, and construction and severability. *Alexis O.*, 959 A.2d at 181–82; *see* TEX. FAM. CODE ANN. § 162.102 (Art. IV, V, VI, VII, IX, X). None of these articles speaks to the applicability of the ICPC. *See Alexis O.*, 959 A.2d at 181–82; *see* TEX.

FAM. CODE ANN. § 162.102. Only one other article in the compact speaks to its applicability—Article VIII, which is entitled "Limitations." *See Alexis O.*, 959 A.2d at 181–82; *see* TEX. FAM. CODE ANN. § 162.102 (Art. VIII). That article provides the ICPC does not apply to the sending or bringing into a receiving state *by a parent* or certain other relatives, or to placements made pursuant to other compacts between states. *Alexis O.*, 959 A.2d at 181–82 (emphasis in the original); *see* TEX. FAM. CODE ANN. § 162.102 (Art. VIII).

The court then held after reading the ICPC as a whole, it was intended to govern only placement of children "in substitute arrangements for parental care." *Alexis O.*, 959 A.2d at 182 (quoting *McComb*, 934 F.2d at 482). The court stated it was not intended to apply "when a child is returned by the sending state to a natural parent residing in another state." *Id.* According to the New Hampshire Supreme Court, the limited scope of the ICPC is evident throughout the compact's provisions, but most significantly evinced by the plain language of Article III(a), "which carefully restricts the reach of the ICPC to foster care or dispositions preliminary to adoption." *Id.* The court held the limited scope of the ICPC is further demonstrated by the definition of "placement" in Article II(d) because as defined, a placement under the ICPC is limited to arrangements for care in a "family free" home or some sort of institution. *Id.*; *see* TEX. FAM. CODE ANN. § 162.102 (Art. II(d)). Although "family free" is not defined in the compact, it contextually refers to a home that provides care similar to that provided by a family, but that unlike a boarding home or institutions, charges no

---

**8.** Article II(d) goes on to exclude "any institution caring for the mentally ill, mentally defective, or epileptic or any institution primarily educational in character, and any hospital or other medical facility." TEX. FAM. CODE ANN. § 162.102 (Art. II(d)). This portion of the definition is inapplicable here.

fee for such care. *Alexis O.*, 959 A.2d at 182. Accordingly, under the plain language of its provisions, the intent of the compact is "to respect the integrity of the family and to allow parents to plan for the care of their own children unless the children were being placed in foster care or were being adopted." *Id.* (quoting Vivek S. Sankaran, *Out of State and Out of Luck: The Treatment of Non-Custodial Parents Under the Interstate Compact on the Placement of Children*, 25 YALE L & POL'Y REV. 63, 70–71 (2006-07)).

The court also recognized that beyond violating the plain language of Article III(a) and the definition of the term "placement," applying the ICPC in the context of placing a child with a natural parent would lead to anomalous results, e.g., the sending state would have a continued duty to support the child regardless of the "traditional duty of natural parents to support their children." *Id.* (quoting *State DYFS v. K.F.*, 353 N.J.Super. 623, 803 A.2d 721, 727 (2002)); *see* TEX. FAM. CODE ANN. § 162.102 (Art. V); *see also Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011); *In re D.M.D.*, 363 S.W.3d 916, 922 (Tex. App.— Houston [14th Dist.] 2012, no pet.) (holding that it is well-settled that parent has duty to provide support for his or her child, even when parent does not have custody and before court order parent to pay support). And, if it could be argued the ICPC is ambiguous in this regard and the legislative history consulted, the draftsman's notes provided to the court in *McComb* explain the ICPC "exempts certain close relatives . . . to protect the social and legal rights of the family and because it is recognized that regulation is desirable only in the absence of adequate family control or in order to forestall conditions which might produce an absence of such control." *Id.* at 183 (quoting *McComb*, 934 F.2d at 481). Thus, the history of the ICPC "confirms its drafters intended it to apply only to placement of a child for foster care or as a preliminary to adoptions." *Id.* "The drafters did not intend for it to apply to natural parents." *Id.*

Thus, the New Hampshire Supreme Court, like other courts, concluded the plain language of the ICPC precluded its application to the interstate placement of children with their parents. *Id.* at 183; *see McComb*, 934 F.2d at 482; *Huff*, 65 S.W.3d at 886–88; *C.B.*, 116 Cal.Rptr.3d at 299–302; *Emoni W.*, 48 A.3d at 6–11; *S.R.C.-Q.*, 367 P.3d at 1281–82; *D.F.-M.*, 236 P.3d at 966–67. The court then considered the contention that although the language of the compact plainly excluded interstate parental placements, Regulation 3 altered this exclusion by expanding the definition of the term "placement" to include placements with parents and relatives in several contexts. *Alexis O.*, 959 A.2d at 184. The supreme court rejected this contention, holding Regulation 3 is of no effect in New Hampshire as the regulations promulgated by the AAICPC had not been adopted by the state. *Id.* However, the court did not stop there; rather, the court went on to conclude that even if Regulation 3 had been adopted according to New Hampshire law or was implicitly adopted by virtue of the state entering into the ICPC, it would be invalid because it conflicts with the plain language of the ICPC, impermissibly expanding its stated scope, which is contrary to New Hampshire law. *Id.* at 184–85 (citing *Kimball v. N.H. Bd. of Accountancy*, 118 N.H. 567, 391 A.2d 888, 889 (1978) (holding rules and regulations adopted by administrative entities may not add to or otherwise modify statutory law); *WMUR Channel Nine v. N.H. Dep't of Fish & Game*, 154 N.H. 46, 908 A.2d 146, 150 (2006) (holding regulations that contradict governing statute exceed agency's authority, voiding such regulations)).

The court concluded the scope of the ICPC, by its plain language, is limited to placements of a child in foster care or as a preliminary to adoption, but Regulation 3 calls for its application "in situations that extend well beyond the commonly understood definitions of 'foster care' and placements 'preliminary to an adoption.'" *Id.* (quoting Sankaran, *supra* at 72). Thus, the Regulation conflicts with the express language of the ICPC, rending the Regulation invalid. The court, in conclusion, held the trial court erred in ruling the ICPC applies to its decision to transfer a child to her mother who resided in another state. *Id.*

■ After reviewing *Alexis O.* and the other cases rejecting application of the ICPC to interstate placement of children with their natural parents as well as the contrary case law, we finding the reasoning of the former persuasive as it parallels our state law regarding the proper interpretation of statutes. The Texas version of the ICPC, like that in the other states, specifically states that it applies to out-of-state placements of children into foster care or preliminary to adoptions. TEX. FAM. CODE ANN. § 162.102 (Art. III(a)). Our definition of "placement" is also limited to arrangements for the care of a child in a family free or other institution. *Id.* § 162.102 (Art. II(d)). We do not find either provision ambiguous, and looking at the plain meaning of the words used, we hold that by its terms the ICPC does not apply to interstate placements of children with their parents. Our conclusion is buttressed by the definitions of "foster care," "foster home," and "adoption" in the Texas Family Code and the Texas Human Resources Code. *See id.* §§ 101.0133 (West Supp. 2016) (defining "foster care"), 162.402(3) (West Supp. 2016) (defining "adoption"); TEX. HUM. RES. CODE ANN. § 42.002(6) (West 2013) (defining "foster

home"). The Code defines "foster care" as the placement of a child "in care outside the child's home in an agency foster group home, agency foster home, foster group home, foster home" or another facility licensed or certified under the Human Resources Code. TEX. FAM. CODE ANN. § 101.0133. "Foster home" is defined in the Human Resources Code as "a childcare facility that provides care for not more than six children for 24 hours a day." TEX. HUM. RES. CODE ANN. § 42.002(6). The Family Code defines "adoption" as "the act of creating the legal relationship of parent and child between a person and a child who is not the biological child of that person." TEX. FAM. CODE ANN. § 162.402(3). These definitions support our conclusion that the reference in Article III(a) to "foster care" and "adoption" does not, under Texas law, include the home or residence of a natural parent. Rather, as the court stated in *Alexis O.*, the reference to "foster care" and "adoption" expresses the intent under the ICPC "to respect the integrity of the family and to allow parents to plan for the care of their own children unless the children were being placed in foster care or were being adopted." *Alexis O.*, 959 A.2d at 182 (quoting *Sankaran*, supra at 70–71).

■ We find further support for our position in the provision of the Texas Administrative Code permitting the application of the AAICPC regulations in Texas. In section 700.1901(c), it permits the Texas Department of Protective and Regulatory Services to apply the AAICPC regulations to interstate placements "within the limits of state law." 40 TEX. ADMIN. CODE § 700.1901(c). Texas law requires courts to interpret statutes, such as the ICPC, according to their plain meaning. *See Gonzalez*, 82 S.W.3d at 327. If we were to accept the expansion of the plain language of the ICPC based on the Regulations—specifi-

cally Regulation 3—we would be outside the confines of Texas law because Texas law requires that agency rules and regulations be consistent with state law. *See, e.g., Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex. 1993) (citing *R.R. Comm'n v. Lone Star Gas Co.,* 844 S.W.2d 679, 685 (Tex. 1992)). Moreover, an agency can only adopt such rules or regulations as are authorized by and consistent with its statutory authority. *Tex. State Bd. of Examiners of Marriage & Family Therapists, v. Tex. Med. Ass'n.,* 511 S.W.3d 28, 33 (Tex. 2017). Rules or regulations that contravene specific statutory language or impose additional burdens or conditions in excess of or contrary to a statutory provision are invalid. *Id.* Regulation 3 is both in contravention of the specific statutory language of Article III(a) and imposes additional burdens and conditions with regard to the interstate placement of children. Thus, Regulation 3 is invalid under Texas law. As stated by the Washington Court of Appeals in *D.F.-M.*:

> [C]ourts, not administrative agencies or individual social workers, are the ultimate evaluators of a parent's ability to care for his child, and the ultimate decisionmakers as to whether placement with a fit parent is in the child's best interests. Yet under regulation 3, when a fit parent is available but an ICPC home study is negative, all discretion is transferred to an administrative agency in the sister state. If the court determines the parent is fit, the ICPC may become an obstacle to the court's ability to act in the best interests of the child.

Accordingly, we hold the ICPC applies only to out-of-state placements of children with foster care or as a preliminary to a possible adoption. The compact does not apply to interstate placements of children with their natural parents. Thus, in this case we hold the associate judge and the trial court erred in ruling the ICPC was applicable to C.R.-A.A.'s placement with Father.

CONCLUSION

Based on the foregoing, we hold the trial court erred in determining: (1) Oklahoma had exclusive continuing jurisdiction over this matter; and (2) the ICPC was applicable with regard to the placement of C.R.-A.A. with Father in Oklahoma. Accordingly, we reverse the trial court's order and remand this matter for further proceedings consistent with our opinion.